# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| ROBERT HEMBREE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>3-D OIL FIELD SERVICES & RENTAL, L.L.C. | Case No. _____<br><br>Jury Trial Demanded<br><br>Class & Collective Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. 3-D Oil Field Services & Rental, L.L.C. (3-D) failed to pay Robert Hembree (Hembree), and other workers like him, overtime as required by the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, (NMMWA).

2. Instead of paying overtime as required by state and federal law, 3-D paid these workers a daily rate with no overtime pay.

3. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

5. The Court has supplemental jurisdiction over the NMMWA claims under 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

7. Hembree worked for 3-D in this District in Jal, New Mexico, and also in Texas.

8. 3-D has availed itself to the jurisdiction of this Court by sending workers, like Hembree, to perform services for 3-D's client in New Mexico.

## THE PARTIES

9. Hembree worked for 3-D as a Test Operator from approximately August 2019 through April 2020.

10. Throughout his time with 3-D, Hembree was paid a day rate with no overtime compensation.

11. Hembree's consent to be a party plaintiff is attached as **Exhibit A**.

12. Hembree represents at least 2 classes of similarly situated co-workers

13. First, Hembree brings this action on behalf of himself and all other similarly situated workers paid by 3-D's day rate system.

14. 3-D paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The FLSA class of similarly situated workers consists of:

**All workers employed by or performing work on behalf of 3-D and paid a day rate without overtime during the past three years (the Day Rate Workers).**

16. Second, Hembree represents a class of similarly situated workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

17. The NMMWA Class is defined as:

**All workers employed by or performing work on behalf of 3-D in New Mexico while paid a day rate without overtime during the past three years (the New Mexico Workers).**

18. 3-D is a company doing business principally in Texas and New Mexico.

19. 3-D is a Texas limited liability company that does business in a systematic and continuous manner in New Mexico, but that does not maintain an agent for service of process in New Mexico. It may therefore be served pursuant to NMSA § 38-1-16(B) and New Mexico Rule of Civil Procedure 1-004(G) by serving its registered agent for service of process, Gary D. Murphy, 621 N. Washington Ave., Livingston, Texas 77351, or by any other method permitted by law.

## COVERAGE UNDER THE FLSA

20. For at least the past three years, 3-D has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. For at least the past three years, 3-D has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22. For at least the past three years, 3-D has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

23. 22. For at least the past three years, 3-D has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials such as drilling equipment, cell phones, laptops, and hand tools that have been moved in or produced for commerce by any person.

24. For at least the past three years 3-D also has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

25. For at least the past three years, Hembree and the Day Rate Workers were engaged in commerce or in the production of goods for commerce or were employees handling, selling, or

otherwise working on goods or materials such as oilfield equipment, cell phones, laptops, and hand tools that have been moved in or produced for commerce by any person. .

## FACTS

26. 3-D is an oilfield services company.

27. To provide services for its client, 3-D hires personnel to perform the necessary work.

28. Over the past three years, 3-D employed dozens of individuals, including Hembree, the Day Rate Workers, the New Mexico Workers to provide these services for its clients.

29. While exact job titles and job duties may differ, these oilfield workers are subjected to the same illegal pay practice for similar work.

30. Specifically, 3-D paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

31. For example, 3-D employed Hembree as a Test Operator.

32. Throughout this time, 3-D paid Hembree on a day rate basis.

33. As a Test Operator, Hembree's primary job duties included rigging up "frac stacks," rigging up wireline lubricators, and testing this equipment in order to ensure that they maintained the capacity to hold the necessary pressure to operate properly.

34. Hembree regularly worked well in excess of 40 hours while employed by 3-D.

35. The work Hembree performed was an essential part of 3-D's core business.

36. For the purposes of an FLSA overtime claim, the Day Rate Workers performed substantially similar job duties related to the servicing of the oil and gas operations of 3-D's clients in the field.

37. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice.

38. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for weeks at a time.

39. Instead of paying them overtime, 3-D paid the Day Rate Workers a day rate.

40. 3-D denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

41. 3-D's policy of failing to pay its workers, including Hembree, overtime violates the FLSA because these workers are entitled to overtime pay at one-and-one-half times their regular rates.

42. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

43. Despite knowing the FLSA and NMMWA's requirements, 3-D failed to pay Hembree, the Day Rate Workers, and the New Mexico Workers overtime for hours worked in excess of 40 hours in a single workweek.

**FLSA VIOLATIONS**

44. Hembree incorporates the preceding paragraphs by reference.

45. As set forth herein, 3-D violated the FLSA by failing to pay Hembree and the Day Rate Workers overtime at one-and-one-half times their regular rates for hours worked in excess of 40 in a workweek.

46. 3-D knowingly, willfully, or with reckless disregard carried out this illegal pattern or practice of failing to pay Hembree and the Day Rate Workers overtime compensation.

47. 3-D's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

48. Accordingly, Hembree and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

**NMMWA VIOLATIONS**

49. Hembree incorporates the preceding paragraphs by reference.

50. Hembree brings this claim under the NMMWA as a Rule 23 class action.

51. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

52. At all relevant times, 3-D was subject to the requirements of the NMMWA.

53. At all relevant times, 3-D employed Hembree and each New Mexico Worker as an "employee" within the meaning of the NMMWA.

54. The NMMWA requires employers like 3-D to pay employees at one-and-one-half times their regular rates for hours worked in excess of 40 hours in any workweek. Hembree the New Mexico Workers are entitled to overtime pay under the NMMWA.

55. 3-D had a policy and practice of failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

56. Hembree and the New Mexico Workers seek unpaid overtime in amount equal one-and-one-half times their regular rates for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

57. Hembree and the New Mexico Workers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by 3-D, as provided by the NMMWA.

58. The improper pay practices at issue were part of a continuing course of conduct, entitling Hembree the New Mexico Workers to recover for all such violations, regardless of the date they occurred.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

59. Hembree incorporates all previous paragraphs and alleges that the illegal pay practices 3-D imposed on them were likewise imposed on the members of the class.

60. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

61. Dozens of other individuals who worked with Hembree indicated they were paid in the same manner, performed similar oilfield services work, and were not properly compensated for all hours worked as required by state and federal wage laws.

62. 3-D employed dozens of Day Rate Workers in New Mexico and Texas, and also employed dozens of New Mexico Workers in New Mexico. As a result, joinder of their individual claims is impracticable, and a class and collective action serves the interests of judicial economy.

63. Based on his experiences and tenure with 3-D, Hembree is aware that 3-D's illegal practices were imposed on other Day Rate Workers and New Mexico Workers.

64. The Day Rate Workers and the New Mexico Workers were all denied overtime compensation when they worked in excess of forty 40 hours per week.

65. 3-D is an "employer" of Hembree, the Day Rate Workers, and the New Mexico Workers.

66. 3-D's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers or the New Mexico Workers.

67. Hembree's experiences are therefore typical of the experiences of the Day Rate Workers and the New Mexico Workers.

68. The specific job titles or precise job locations of the Day Rate Workers and the New Mexico Workers do not prevent class or collective treatment.

69. Hembree has no interests contrary to, or in conflict with, the Day Rate Workers or the New Mexico Workers.

70. Hembree has an interest in obtaining the unpaid overtime wages owed under state and/or federal law just like the Day Rate Workers and the New Mexico Workers.

71. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

72. Absent this action, many Day Rate Workers and New Mexico Workers likely will not obtain redress of their injuries and 3-D will reap the unjust benefits of violating the FLSA and the NMMWA.

73. Furthermore, even if some of the Day Rate Workers and the New Mexico Workers could afford individual litigation against 3-D, it would be unduly burdensome to the judicial system.

74. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

75. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members.

76. Among the common questions of law and fact are:

    (a) Whether 3-D employed the members of the class within the meaning of the FLSA and the NMMWA;

    (b) Whether 3-D's failure to pay overtime was made in good faith;

      (c)      Whether 3-D's violation of the law was willful; and

      (d)      Whether 3-D's illegal pay practices were applied uniformly to the Day Rate Workers and the New Mexico Workers.

77. Hembree's claims are typical of the claims of the other Day Rate Workers and New Mexico Workers.

78. All Day Rate Workers and New Mexico Workers, including Hembree, sustained damages arising out of 3-D's illegal and uniform employment policy.

79. Hembree knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or a collective action.

80. Even if the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

81. Hembree demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment against 3-D as follows:

      (a)      For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

      (b)      For an order pursuant to section 16(b) of the FLSA finding 3-D liable for all unpaid overtime and an equal amount of liquidated damages;

      (c)      For an order designating the New Mexico Workers NMMWA claims as a class action pursuant to FED. R. CIV. P. 23;

      (d)      For an order finding 3-D liable for all unpaid overtime owed under NMMWA at the highest available rates allowed by law;

      (e)      For an order appointing Hembree and his counsel to represent the interests of the federal collective and the Rule 23 Class;

(f) For an order awarding Hembree, the Day Rate Workers, and the New Mexico Workers their costs;

(g) For an order awarding Hembree, the Day Rate Workers, and the New Mexico Workers their attorneys' fees;

(h) For an order awarding Hembree, the Day Rate Workers, and the New Mexico Workers pre- and post-judgment interest at the highest rates allowed by law; and

(i) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael K. Burke*
Michael K. Burke
Texas Bar No. 24012359
Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
mburke@brucknerburch.com
rburch@brucknerburch.com

**AND**

Andrew W. Dunlap
Texas Bar No. 24078444
(*seeking admission pro hac vice*)
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A

## FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Robert Hembree

1. I hereby consent to make a claim against 3D Oilfield Services to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against 3D Oilfield Services.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Robert Hembree* (Apr 7, 2020)

Date Signed: Apr 7, 2020